**ORIGINAL**

McDERMOTT WILL & EMERY LLP
TERRANCE P. MCMAHON (071910)
tmcmahon@mwe.com
WILLIAM G. GAEDE, III (136184)
wgaede@mwe.com
DAVID H. DOLKAS (111080)
ddolkas@mwe.com
VERA M. ELSON (156327)
275 Middlefield Road, Suite 100
Menlo Park, CA 94024-4004
Telephone: (650) 815-7400
Facsimile: (650) 815-7401

*Attorneys for Seagate Technology, LLC.*

FILED
APR - 4 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CV 11 80 071 MISC   WHA

| | |
|---|---|
| CONVOLVE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DELL, INC., *et al.*,<br><br>Defendants. | CASE NO.: MISC<br><br>**Pending in the United States District Court, Eastern District Of Texas**<br>**Civil Action No. 2:08-Cv-244**<br><br>**NOTICE OF MOTION AND MOTION TO QUASH AND/OR MODIFY THIRD PARTY SUBPOENA, OR ALTERNATIVELY FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 12, 2011<br>Time: 2:00 PM<br>Courtroom 9, 19th Floor<br><br>**Honorable William Alsup** |

PLEASE TAKE NOTICE THAT, pursuant to Rule 45(C)(3)(A), on May 12, 2011, at 2:00 PM, or as soon as the matter may be heard, in Courtroom 9, 19th Floor of the above-referenced Court at 450 Golden Gate Avenue, San Francisco, California, Seagate Technology, LLC ("Seagate"), a non-party to this proceeding, files this Motion to Quash and/or Modify the Subpoena Duces Tecum and Deposition Notice Pursuant to Federal Rule of Civil Procedure 30(b)(6) served by Hitachi Global Storage Technologies, Inc. and Hitachi Ltd. ("Hitachi"), or alternatively moves for a protective order.

Seagate's motion is supported by this Notice of Motion, the following Memorandum of Points and Authorities, and the Declaration of William G. Gaede, III ("Gaede Decl.") filed consecutively herewith.

## MEMORANDUM

### I. INTRODUCTION

Third party Seagate moves to quash portions of the Rule 30(b)(6) deposition notice and subpoena *duces tecum* served by Hitachi Inc. arising out of a patent infringement suit brought by Convolve Inc. pending in the Eastern District of Texas against Hitachi, Dell Computers, and Western Digital. Seagate has already produced over 18,000 pages of documents in the action, as well as more than 4,500 pages of deposition transcripts by its employees from a proceeding in the Southern District of New York where Convolve similarly accuses Seagate of patent infringement of the same patent. Seagate has further stated that it will provide the fact witnesses for deposition testimony that relate to the prior art disc drives.

Despite this extensive discovery provided in good faith cooperation by Seagate, Hitachi now wants more than just fact discovery related to Seagate's prior art disc drives: Hitachi seeks to compel Seagate fact employees to perform demonstrations of its Seagate prior art disc drives in a videotaped deposition. Hitachi further seeks to compel testimony from Seagate employees on demonstrations Convolve performed at Seagate. Convolve will contend that such testimony, if provided, will constitute (i) a breach of the Protective Order in the Southern District of New York and (ii) a breach of a 1998 Non-Disclosure Agreement between Convolve and Seagate. Finally, Hitachi seeks to compel Seagate to search for software, documents and other materials related to

1   these prior art disc drives after already having responded to a document subpoena in 2009. In the
2   words of the Federal Circuit, Hitachi is not just "fishing," Hitachi is "unmoored and trawling."
3   *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 873 F.2d 1450 (Fed. Cir. 1988) (quashing subpoena on
4   a third party).

5   The first issue is straightforward: There is to Seagate's knowledge no authority under
6   Rule 45 to compel a fact witness to perform a demonstration using 20 year old disc drives,
7   computers, software, and oscilloscopes. If demonstrations are to be performed and of use in a
8   proceeding, that is a matter for the experts to perform or a trial judge to allow at trial – not a third
9   party by videotaped deposition. Any demonstration is a recreation of how a drive would have
10  worked in 1993, and thus is not discovery of existing facts, but requires the creation of facts.
11  Rule 26 and Rule 45 place no obligation on a third party to create facts.

12  As to the second ground, Seagate is deeply and correctly concerned that Convolve will
13  contend that any testimony provided by Seagate witnesses on demonstrations by Convolve at
14  Seagate prior to March 3, 1999, violates the parties' 1998 NDA and the Southern District of New
15  York's protective order. In that proceeding, Convolve has taken the position that Seagate
16  employees are not even permitted to see Convolve's trade secret identification under California
17  Code of Civil Procedure 2019(d). In other words, so zealous is Convolve that the Seagate
18  employees are not even allowed to know the identity of the trade secrets they allegedly took.
19  Seagate is also deeply concerned that Convolve will simply use the depositions as a means for
20  further discovery in New York, where fact discovery has been closed since 2003.

21  Finally, while Seagate is agreeable to providing testimony by knowledgeable witnesses on
22  its prior art disc drives, and has already produced over 18,000 pages of documents, it is unduly
23  burdensome for Seagate to go back through its documentation and search for responsive
24  information again on the disc drives.

25  Seagate asks that the Court modify the attached subpoena to quash the demonstration
26  category and the category seeking testimony of demonstrations by Convolve at Seagate. Seagate
27  further requests that it not be required to search for and to produce documents on prior art disc
28  drives not already produced. Seagate further requests that the Court order that the inquiry of

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

these depositions be strictly limited to the categories identified, and that any questioning outside the scope will be in contravention of a court order.

## II. STATEMENT OF FACTS

### A. BACKGROUND OF THE CASE

In July 2000, Convolve, Inc. sued Seagate and Compaq Computer Corporation in the Southern District of New York, (Civil Case No. 00-Civ.-5141), alleging various causes of action, including patent infringement of Convolve's U.S. Patent 4,916,635 and 6,314,473, trade secret misappropriation and other common law claims (the "Seagate Litigation"). This litigation is still pending in the Southern District of New York. The parties are awaiting summary judgment rulings and no trial date has been set. Discovery has been closed in the case since 2003.

In June 2008, Convolve, Inc. sued Dell, Inc., Western Digital Corporation, and Hitachi in the Eastern District of Texas, Civil Case No. 2:08-CV-244, ("EDTX Litigation"). In the EDTX Litigation Convolve has alleged that the defendants' products infringe Convolve's U.S. Patent 6,314,473 ('473 Patent), which is one of the patents asserted by Convolve against Seagate in the Seagate Litigation. The '473 Patent generally relates to a method for a user to switch a computer hard disc drive between a quicker but acoustically louder mode and a slower but acoustically quieter mode.

The EDTX Litigation is currently scheduled to commence trial on July 5, 2011, and fact discovery, which was recently extended, is set to close on April 15, 2011. As part of its defense in the EDTX Litigation, Hitachi and the other defendants would like to establish that certain of Seagate's hard disk drives are prior art to the '473 Patent and thus invalidate the '473 Patent. To that end, Hitachi served a subpoena on Seagate in December 2009 requesting the production of documents which relate to invalidity of the '473 Patent Seagate including prior art identified in the Seagate Litigation, documents relating to the prior art identified in the Seagate Litigation, relevant expert reports, and deposition transcripts. Subject to its objections, Seagate diligently responded to Hitachi's document requests and produced over 22,000 pages of documents and transcripts. (Gaede Decl., ¶ 5.)

On March 15, 2011, Hitachi served multiple subpoenas on Seagate which included documents requests, an individual subpoena request to two Seagate engineers, and a Rule 30(b)(6) deponent. Upon receipt Seagate asked Hitachi and the other EDTX defendants to meet and confer to discuss the scope of the subpoena *duces tecum* and deposition notice. The first meet and confer occurred by telephonic conference on March 18, 2011. At that time Seagate informed Hitachi and other EDTX defendants that it had concerns about the broad scope of the subpoena and the unreasonable burden the subpoena imposed on Seagate. Additionally, Seagate asked Hitachi why its March 15, 2011, subpoena repeated several topics from its December 3, 2009, subpoena and requested Hitachi identify in more particularity what information they were seeking. Seagate further informed Hitachi that to the extent the topics were the same Seagate did not have further responsive documents and things. Seagate continued to try to meet and confer with Hitachi on several occasions without reaching agreement. The parties have agreed that Seagate's motion is a timely and appropriate means to resolve the issues. (Gaede Decl. at ¶ 4.)

On March 28, 2011, Hitachi withdrew some of its subpoenas and reserved Attachment A to their March 15, 2011, document subpoena. (Gaede Decl., Ex. 2.) On April 4, 2011, Hitachi reserved their 30(b)(6) subpoena and its Attachments A and B. (Gaede Decl., Ex. 3.) The revised subpoenas maintain the objectionable document requests and deposition topics (collectively referred to as the "Hitachi Subpoena").

Unsuccessful in its effort to "meet and confer," Seagate seeks an order under Federal Rule of Civil Procedure 45 limiting the Subpoena and a protective order against both the Hitachi Subpoena and any further discovery under Federal Rule of Civil Procedure 26 outside the scope herein.

### B. OVERVIEW OF THE HITACHI SUBPOENA

The Hitachi Subpoena requests fall into three main categories:

**Category 1** requests documents and testimony, which refer or relate to demonstrations Convolve made to Seagate before March 4, 1999. (*See,* Gaede Decl., Ex. 2, Attachment A, Request No. 1, and Ex. 3, Attachment A, Examination Topic No. 1.)

1    **Category 2** requests production of Seagate disk drives made, sold or used by Seagate before March 4, 1999, under the "Hawk" or "Quasar" name, as well as, an executable copy of the utility software, firmware for each drive from that same time period and documents referring to or relating to development work for those drives. (*See,* Gaede Decl., Ex. 2, Attachment A, Request Nos. 2-9; Ex. 3, Attachment A, Examination Topic Nos. 4-10.)

**Category 3** relates to Hitachi's demonstration requests and commands Seagate to produce and set up one prior art hard drive and related software and measuring equipment in a configuration that will allow Seagate to demonstrate that its hard drive, the Hawk 2 could be controlled by certain utility software to command the drive to run in either a performance or acoustic mode. (*See,* Gaede Decl., Ex. 3, Attachment B, Request No. 1; Ex. 3, Attachment A, Examination Topic No. 3.)

Seagate moves to quash or modify the Subpoena on three main grounds. First, a deponent under FRCP 30(b)(6) or FRCP 45 cannot be compelled to perform demonstrations during a deposition, as Category 3 requires. Second, Category 1 requires documents and deposition topics that call for the disclosure of alleged Convolve confidential information that is subject to a protective order in another litigation and in Convolve's view contains Convolve confidential information, which was disclosed to Seagate under a non-disclosure agreement. Finally, to the extent Category 2 requires Seagate to perform additional document searches, Seagate asks that the request be quashed in view of the extensive efforts to date to produce documents and transcripts.

### III.    LEGAL STANDARDS

If the Court concludes that compliance with the Hitachi Subpoena would constitute an undue burden on Seagate, then the Court ***must*** quash (or modify) the subpoena. Rule 45(c)(3)(A). If the Court concludes that compliance with the subpoena requires the disclosure of confidential commercial information, the Court may quash the subpoena. Rule 45(c)(3)(B).

The party who moves to quash has the burden of persuasion. *See Moon v. SCP Pool Corporation*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (where the court found the subpoena imposed an undue burden on the nonparty and entered an order quashing the subpoena). An evaluation of

the undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. *Moon, Id.* (citation omitted.) In particular, the court ruling on the non-party's motion to quash should consider the following factors: relevance; the need of the party for the documents; the breadth of the document request; the time period covered and the particularity with which the documents are described; and, finally, the burden imposed. *Id. citing and quoting, United States v. IBM*, 83 F.R.D 97, 104 (S.D.N.Y. 1979).

In *WM High Yield v. O'Hanlon*, 460 F.Supp. 2d 891 (S.D. Ind. 2006), the court granted the non-party's motion to quash a subpoena served by the defendant Deloitte & Touche for all documents between the non-party and a former plaintiff and current plaintiffs in the action brought against Deloitte. The court rejected Deloitte's argument that relevance is an improper consideration in the court's evaluation of a motion to quash: "Relevancy is one of several factors a court must consider when computing undue burden." *Id.* at 895, *citing Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662-63 (D. Kan. 2003). "Additionally, non-party status is a **significant factor** a court must consider when assessing undue burden for purpose of a Rule 45 motion." *Id.* at 895-896 (citation omitted and emphasis added.) The court granted the motion to quash because Deloitte failed to show the relevance of the non-party's dealings with a former plaintiff; nor had Deloitte shown that the information sought related to the non-party and could not be obtained from the current plaintiffs.

## IV. ARGUMENT

### A. RULE 30 OR RULE 45 DOES NOT GIVE THE POWER TO COMMAND A DEMONSTRATION

Rule 30(a) expressly allows for deposition by oral questions and does not identify demonstrations as permissible examination. "A party may, by oral questions, depose any person . . . without leave of court except as provided in Rule 30(a)(2)." Fed. R. Civ. P. 30(a)(1). Further, a "deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1). A party can command a person to produce tangible things under Rule 45, but its power is limited to the "inspection, copying, testing, or sampling" of the produced materials. Fed. R. Civ. P. 45(a)(1). Among other things, Rule 45 gives a party the power to "command each person

1  to whom [a subpoena] is directed to . . . produce . . . tangible things in that person's possession,
2  custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). The command to produce tangible things
3  may be included in a subpoena requiring attendance at a deposition or may be set out in a separate
4  subpoena. Fed. R. Civ. P. 45(a)(1)(C). The Rule 45 grant of power to command the production
5  of tangible things does not include the power to order a technical demonstration of a physical
6  object. Instead, "[a] command in a subpoena to produce . . . tangible things requires the
7  responding party to permit inspection, copying, testing, or sampling of the materials." Fed. R.
8  Civ. P. 45(a)(1)(D).

9  The Hitachi Subpoena violates the scope of Rules 30 and 45 because it commands that
10 Seagate demonstrate how two of its 1993 hard disk drives can be changed to control data access
11 time ("seek time") in a faster and louder mode or in a slower and quieter mode. For instance, the
12 Hitachi Subpoena requests that Seagate provide "[a] Hawk 2 hard drive in working order, an
13 executable copy of the CTSS Utility, a computer, including operating system, that was publicly
14 available when the 1993 Hawk 2 hard drive was released, and an oscilloscope; configured and
15 operable such that the settings in the CTSS utility can be altered on the computer to control seek
16 time or acoustic noise level of the Hawk 2 hard drive and where the resultant waveforms
17 generated by the Hawk 2 hard drive after operation of the CTSS utility to control the Hawk 2 hard
18 drive can be viewed on the oscilloscope." (*See,* Gaede Decl., Ex. 3, Attachment B, Request No.
19 1.)

20 Htachi's request that Seagate provide all of the hardware and software including hard disk
21 drives, CTSS Software, firmware, computer and operating system that was publicly available in
22 the early 1990's is unduly burdensome. Moreover, the setting of a deposition is not conducive to
23 a demonstration of this nature. The amount of labor it would take to locate, move and set up all
24 of the hardware, software and measuring equipment, were it even available, is enormous. If
25 Hitachi wishes to show by deposition how Seagate's drives worked, that demonstration and
26 testing should be conducted by Hitachi's experts and not Seagate's engineers.

27
28

### B. SOME OF THE INFORMATION SOUGHT BY HITACHI IS ALLEGEDLY CONVOLVE CONFIDENTIAL INFORMATION AND IS SUBJECT TO A PROTECTIVE ORDER IN THE SEAGATE LITIGATION

The Hitachi Subpoena requests information related to the demonstrations Convolve made to Seagate prior to March 4, 1999. On March 18, 2011, Seagate informed Hitachi that it could not provide this information to Hitachi, absent a stipulation from Convolve because the requested information was either, arguably provided to Seagate under a Non-Disclosure Agreement and/or is subject to the protective order in the Seagate Litigation, and Convolve has contended that all disclosures by Convolve to Seagate constituted Convolve proprietary information (a contention that is in dispute in the Seagate Ligitation). Moreover, Seagate informed Hitachi that the Seagate Litigation has been very contentious as is evident by the more than 989 docket entries in the case, and that Seagate would not and could not disclose information designated as Convolve confidential absent either a stipulation or court order. Indeed, in the Seagate Litigation, Convolve has taken the position that even disclosure of the trade secret identification chart under California Code of Civil Procedure 2019(d) to a Seagate employee charged with trade secret misappropriation constitutes a violation of the parties' 1998 NDA and the Court's Protective Order. Thus, prior to producing any documents or testimony about the responsive demonstrations made by Convolve, if any, Seagate would require a stipulation from Convolve that production of documents and testimony related to this request do not constitute a breach of either the non-disclosure agreement or violation of the protective order in the Seagate Litigation or a court order to that effect.

### C. THE SCOPE OF THE SUBPOENA IS UNREASONABLY BROAD AND COMPLIANCE WOULD BE UNDULY BURDENSOME TO REQUIRE SEAGATE TO SEARCH AGAIN FOR DOCUMENTS PREVIOUSLY PRODUCED

Seagate also objects to the scope of the Subpoena to the extent it requires Seagate to search again for responsive documents. Further, Hitachi's document requests seeks all non-privileged documents related to two families of Seagate hard disk drives, the "Hawk" drives and the "Quasar" drives, as well as working samples of each of the hard disk drives sold before March 4, 1999. First, Seagate's Hawk and Quasar families of disk drives are extensive and covers several models. Moreover, the Hawk family of disk drives was developed and sold by Seagate in

the early 1990's which is nearly two decades ago and the Quasar family of disk drives was developed and sold in the late 1990's. At this point, nearly twenty years after the drives were developed Seagate is unlikely to have working samples. Moreover, the Quasar family of drives was developed by Maxtor, another disk drive company, which was acquired by Seagate in 2006. In addition to seeking a working sample of the disk drive, Hitachi requests that Seagate provide the utility software and firmware manufactured or sold in conjunction with each of the prior art hard drives.

Despite this burden, Seagate has already expended significant resources in 2009 in locating and producing documents and software code in response to the earlier subpoenas providing over 22,000 pages of documents and transcripts. Seagate further will provide Rule 30(b)(6) deponents on the prior art disc drives. Seagate should not be required to go back and search again, and thus to the extent the subpoena requests documents not already requested, it should be quashed.

## V. THE COURT SHOULD ISSUE A PROTECTIVE ORDER AGAINST ANY FURTHER DISCOVERY FROM SEAGATE REGARDING ITS DISK DRIVES

Rule 26(c) permits a court to grant a protective order to protect Seagate from undue burden or expense. In addition to asking the Court to quash the Hitachi Subpoena, Seagate asks the Court to also enter a protective order precluding Hitachi or other EDTX parties from seeking any further discovery from Seagate. By this motion, Seagate has established the considerable burden and expense that would be incurred absent an order quashing the subpoena. Seagate has spent thousands of dollars in meet and confer efforts and in responding to the Hitachi Subpoena by this motion. Moreover, Seagate requests that the Court issue an order that any questioning at deposition be limited to the categories permitted. Accordingly and as set forth in the proposed Order submitted with this motion, Seagate asks the Court to enter a protective order barring any further discovery from Seagate concerning its license agreements and related topics.

## VI. CONCLUSION

For the several reasons discussed, Seagate respectfully asks that the Court enter an Order quashing the Hitachi Subpoena under Rule 45(c) and issue a Protective Order under Rule 26(c) precluding any further discovery from Seagate by Hitachi or other or other EDTX parties.

DATED: ___April 4, 2011___                MCDERMOTT WILL & EMERY LLP

By: _____
        William G. Gaede, III

*Attorneys for Seagate Technology, LLC*