Douglas E. Lumish, Cal. Bar No. 183863
E-mail: dlumish@kasowitz.com
Jeffrey G. Homrig, Cal. Bar No. 215890
E-mail: jhomrig@kasowitz.com
Kasowitz, Benson, Torres & Friedman LLP
101 California Street, Suite 2300
San Francisco, California 94111
Telephone (415) 655-4310
Facsimile (415) 651-8703

Attorneys for Defendants Hitachi Global Storage Technologies, Inc. and Hitachi Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONVOLVE, INC., | Case No.: 11 80 071 MISC WHA |
| Plaintiff, | **Pending in the United States District Court, Eastern District of Texas** |
| v. | **Civil Action No. 2:08-CV-244** |
| DELL, INC., *et al.*, | **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO SEAGATE TECHNOLOGY, LLC'S MOTION TO QUASH AND/OR MODIFY THIRD PARTY SUBPOENA, OR ALTERNATIVELY FOR PROTECTIVE ORDER** |
| Defendants. | |
| | Date: May 12, 2011<br>Time: 2:00 PM<br>Courtroom 9, 19th Floor |
| | **Honorable William Alsup** |

KASOWITZ, BENSON,
TORRES & FRIEDMAN
LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**

**Page**

I. Introduction ................................................................................................................. 1

II. Background Of The Case ............................................................................................ 2

III. Legal Standards ........................................................................................................... 4

IV. Argument ..................................................................................................................... 6

    A. The Request For A Demonstration Of The Hawk 2 Drive Is Permissible And Warranted Under Fed. R. Civ. P. 26, 30, and 45 .............................................. 6

    B. Seagate Should Be Compelled To Provide Discovery Concerning Demonstrations By Convolve ................................................................................ 8

    C. The 2011 Subpoena Is Narrowly-Tailored And The Texas Defendants Do Not Require Seagate To Search Again For Documents Previously Produced ....... 10

    D. Seagate's Request For A Blanket Protective Order Is Unnecessary and Unwarranted .......................................................................................................... 11

V. Conclusion ................................................................................................................... 11

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Brown v. General Instrument Corp., et al.*,
 1995 U.S. Dist. LEXIS 5472 Civ. 7907 (KMW) (S.D.N.Y. Apr. 26, 1995) ........................... 7

*Gillen v. Nissan Motor Corp. in U.S.A.*,
 156 F.R.D. 120 (E.D. Pa. 1994) ........................................................................................ 7

*Meeks v. Parsons*,
 2009 U.S. Dist. LEXIS 90283, Case No. 1:03-cv-6700-LJO-GSA (E.D. Cal. Sept. 18, 2009) ............................................................................................................................... 5

*Moncrief v. Fecken-Kipfel America, Inc.*,
 1988 U.S. Dist. LEXIS 6153, Case No. 88-4930 (E.D. Pa. June 23, 1988) ........................... 6

*Moon v. SCP Pool Corporation, et al.*
 232 F.R.D. 633 (C.D. Cal. 2005) ...................................................................................... 5

*Roberts v. Homelite Division of Textron, Inc.*,
 109 F.R.D. 664 (N.D. Ind. 1986) ..................................................................................... 5

*RQ Construction, Inc. v. Ecolite Concrete U.S.A., Inc., et al.*,
 2010 U.S. Dist. LEXIS 80217, Civil No. 09-CV-2728-BEN(WVG) (S.D. Cal. Aug. 4, 2010) ............................................................................................................................... 5

*Schmidt v. Bryner, et al.*,
 2007 U.S. Dist. LEXIS 60365, 4:06cv3285 (D. Neb. Aug. 15. 2007) ................................... 7

*Sedaghatpour v. State of California*,
 2007 U.S. Dist. LEXIS 91059, No. C 07-1802 WHA (MEJ) (N.D. Cal. Dec. 3, 2007) .......... 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 5

Fed. R. Civ. P. 45 ............................................................................................................... 4, 5

KASOWITZ, BENSON,
TORRES & FRIEDMAN
LLP
ATTORNEYS AT LAW

- ii -                    CASE NO. 11 80 071 MISC WHA

Hitachi, Ltd. and Hitachi Global Storage Technologies, Inc. ("Hitachi"), on behalf of themselves, Western Digital, and Dell (collectively, "the Texas defendants"), respectfully submits this memorandum of law in opposition to the motion by Seagate Technology, LLC ("Seagate") to quash and/or modify the Subpoenas Duces Tecum and Deposition Notice Pursuant to Federal Rule of Civil Procedure 30(b)(6) served by Hitachi (collectively, "2011 Subpoena"), or alternatively for protective order, under Fed. R. Civ. P. 45(c)(3)(A).

## I. INTRODUCTION

Seagate is not a typical third party to this case. For nine years, Seagate has been involved in litigation with Convolve, Inc. ("Convolve"), which accuses Seagate, *inter alia*, of infringing U.S. Patent No. 6,314,473 ("the '473 patent") through the implementation of an acoustic feature known as "Advanced Acoustic Management" ("AAM") in Seagate's hard disk drives. In response, Seagate asserts that the claims of the '473 patent are invalid, *inter alia*, based on the acoustic features of Seagate's own prior art Hawk and Quasar disk drives. In pursuit of those invalidity allegations, Seagate has spent years gathering evidence showing how its Hawk and Quasar drives operated prior to March 4, 1999, and why they disclose each limitation of the '473 patent claims.

The Texas defendants – who were sued by Convolve in a later-filed action in Texas, but who are scheduled to go to trial first – are Seagate competitors (except for Dell which is a Seagate customer) and are also accused of infringing the same '473 patent through their sale of products alleged to enable the same AAM feature. Like Seagate, the Texas defendants contend that the Hawk and Quasar drives invalidate the claims of the '473 patent. Since 2009, the Texas defendants have sought from Seagate materials showing how the prior art Hawk and Quasar drives operated. After receiving in 2010 at least some of the materials Seagate had gathered about these drives for its own litigation, the Texas defendants served the subpoenas giving rise to this motion. These subpoenas are intended to ensure that the Texas defendants have a complete record – in other words, that they have access to the very same factual information that Seagate has gathered in support of its own litigation – with respect to the Hawk and Quasar drives. But while Seagate has agreed to provide some of the information at its disposal in response to the

subpoenas, it has done so selectively.  For example, although Seagate has agreed to produce witnesses to testify about the features and operation of the Hawk 2 disk drive, it steadfastly refuses to permit its witnesses – who have direct factual knowledge of the acoustic capabilities of the Hawk 2 prior art disk drives prior to the March 4, 1999 filing date for the patent-in-suit – to demonstrate those capabilities during the deposition.  In addition, citing a fear that it will once again be sued by Convolve, Seagate has refused to provide evidence related to technical discussions that occurred between Convolve and Seagate before the filing date of the patent-in-suit, which may establish an "on-sale bar" that invalidates the asserted claims.  Finally, though Seagate has informed the Texas defendants that it has collected responsive materials, including physical samples of the prior art drives, for its own litigation, Seagate has not produced these materials in response to the subpoenas.

Whatever its motivations for doing so, Seagate should not be permitted to pick and choose what evidence concerning the prior art Seagate disk drives it will produce to the Texas defendants in response to the subpoenas.  These indisputably relevant materials and information are within Seagate's possession, and the Texas defendants should have the same opportunity as Seagate to present them at trial.  Seagate's motion to quash should be denied.

## II.   BACKGROUND OF THE CASE

In July 2000, Convolve sued Seagate and Compaq Computer Corporation in the Southern District of New York, Case No. 00-Civ-5141 ("Seagate litigation"), and in January 2002, Convolve filed an Amended Complaint alleging that Defendants infringe U.S. Patent No. 4,916,635 ("the '635 patent") and the '473 patent.  According to Convolve, the '473 patent covers a system with a user interface that can switch the disk drive from a slower "quiet" mode to a faster, but more noisy, "performance" mode.  Convolve asserts that Seagate disk drives containing a feature known as AAM incorporate "quick and quiet" modes that practice the claims of the '473 patent.  *See e.g.,* Declaration of Jeffrey G. Homrig ("Homrig Decl."), Exh. 1 [January 16, 2002 Amended Complaint, 00-CIV-5141 Dkt. 50] at ¶¶ 4, 6, 58-66, 115-120.  In response, Seagate contends that its Hawk and Quasar disk drives, which were commercially available before the patent's filing date, contain this same functionality, and invalidate the '473 patent

claims. Homrig Decl., Exh. 2 [Oct. 30, 2007 Expert Report of William C. Messner, Ph.D.] at 31, 38-39. The Seagate litigation is still pending, fact and expert discovery are complete, and a trial date has not yet been set.

In June 2008, Convolve sued the Texas defendants in the Eastern District of Texas, Civil Case No. 2:08-CV-244 ("Texas litigation"). In the Texas litigation, Convolve also alleges that the Texas defendants infringe the '473 patent by selling disk drives and computers that include the AAM feature. Like Seagate, the Texas defendants assert that the Seagate Hawk and Quasar disk drives are invalidating prior art. Homrig Decl., Exh. 3 [February 24, 2011 Defendants' Final Invalidity Contentions] at 4-7. To obtain evidence regarding these prior art disk drives, the Texas defendants served a subpoena on Seagate in December 2009 ("2009 Subpoena") requesting the production of documents and other materials related to those drives. April 4, 2011 Declaration of William G. Gaede, III ("Gaede Decl."), Exh. 1.

In response to the 2009 Subpoena, Seagate produced documents related to various prior art hard drives, including the Hawk and Quasar drives. After reviewing these materials and other evidence concerning the Hawk and Quasar drives, the Texas defendants identified a focused set of issues about which further discovery was warranted. On March 15, 2011, the Texas defendants served additional subpoenas on Seagate, which consisted of document requests, individual subpoenas to two Seagate engineers, and a Seagate Rule 30(b)(6) deposition notice. After service of the subpoenas, the parties met and conferred on numerous occasions to discuss the scope of the subpoenas. Homrig Decl. at ¶ 4.

In the course of those discussions, the Texas defendants agreed to withdraw the individual subpoena requests and to narrow their document requests and Rule 30(b)(6) examination topics in various ways to focus the additional discovery being sought and to reduce the burden of providing it. In addition, the Texas defendants and Seagate reached agreement on a number of issues, including:

- Seagate agreed to designate Randall Hampshire and Lealon McKenzie to testify at deposition on behalf of Seagate with respect to the majority of

Hawk-related topics, including the features, function, and structure of the prior art Hawk drives;

- Seagate agreed to designate a witness to testify at deposition on behalf of Seagate with respect to the features, function, and structure of the prior art Quasar drives;

- Seagate agreed to produce additional materials related to these disk drives, including a copy of a "CTSS" software interface that can be used to switch the Hawk drive between "quiet" and "performance" modes.

Homrig Decl. at ¶ 5. On March 28, 2011, the Texas defendants served amended attachments to the document and Rule 30(b)(6) deposition subpoenas that reflected the above agreements and further narrowed the document requests and deposition topics. Gaede Decl., Exh. 2. On April 4, 2011, at Seagate's request, the Texas defendants re-served the 30(b)(6) subpoena and Attachments A and B. Gaede Decl., Exh. 3.

Following this meet-and-confer process, three key disputes remain:

1. Whether Mr. McKenzie and/or Mr. Hampshire would demonstrate the acoustic capabilities of the Hawk 2 drive, as requested in Matter No. 3;

2. Whether Seagate would designate Messrs McKenzie and Hampshire to testify about, and would produce documents about, technical discussions between Seagate and Convolve that pre-date the filing of the patent-in-suit and may invalidate it; and

3. Whether Seagate will produce and/or make available for inspection the complete set of materials related to the Hawk and Quasar drives that it has gathered for its own litigation.

As discussed below, there is no genuine, cognizable basis for quashing the Texas defendants' subpoenas as to these three remaining issues.

### III. LEGAL STANDARDS

Under Fed. R. Civ. P. 45, any party may serve a subpoena commanding a non-party to give testimony or produce documents. Fed. R. Civ. P. 45(a)(1)(C). The scope of

1  discovery under Fed. R. Civ. P. 45 is the same as that applicable to Fed. R. Civ. P. 34 and the
2  other discovery rules. Fed. R. Civ. P. 45 Advisory Committee Notes (1970).

3  Under Fed. R. Civ. P. 26(b)(1), parties may obtain discovery about any
4  nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1).
5  "[R]elevant matter is 'any matter that bears on, or that reasonably could lead to other matters that
6  could bear on, any issue that is or may be in the case.'" *RQ Construction, Inc. v. Ecolite Concrete*
7  *U.S.A., Inc., et al.,* 2010 U.S. Dist. LEXIS 80217, Civil No. 09-CV-2728-BEN(WVG), at *3
8  (S.D. Cal. Aug. 4, 2010) (citations omitted). "Generally, the purpose of discovery is to remove
9  surprise from trial preparation so the parties can obtain evidence necessary to evaluate and
10 resolve their dispute. Toward this end, *Rule 26(b)* is liberally interpreted to permit wide-ranging
11 discovery of information even though the information may not be admissible at the trial." *Moon*
12 *v. SCP Pool Corporation, et al.* 232 F.R.D. 633, 636 (C.D. Cal. 2005) (citations omitted).

13 "'The law [of discovery] begins with the presumption that the public is entitled to
14 every person's evidence.' … Assuming that the subpoena is properly constituted and served, Rule
15 45 requires the subpoena's recipient to produce the requested information and materials, provided
16 the issuing party 'take[s] reasonable steps to avoid imposing undue burden or expense.'… The
17 recipient may object to all or part of the subpoena or move to quash or modify it." *Meeks v.*
18 *Parsons*, 2009 U.S. Dist. LEXIS 90283, Case No. 1:03-cv-6700-LJO-GSA, at *7 (E.D. Cal. Sept.
19 18, 2009) (citations omitted). "The party objecting to the discovery bears the burden of showing
20 that it should not be allowed." *Sedaghatpour v. State of California*, 2007 U.S. Dist. LEXIS
21 91059, No. C 07-1802 WHA (MEJ), at *2 (N.D. Cal. Dec. 3, 2007) (citing Fed. R. Civ. P. 26(c)).
22 And the party who moves to quash a subpoena has the burden of persuasion. *Moon,* 232 F.R.D.
23 at 637 (citations omitted).

24 Under the liberal discovery rules, including Rule 30, Courts have ordered
25 videotaped depositions of demonstrations and reenactments, especially where demonstrative
26 testimony will provide better clarity of the relevant facts and issues. *See e.g. Roberts v. Homelite*
27 *Division of Textron, Inc.,* 109 F.R.D. 664, 668 (N.D. Ind. 1986) (granting motion for videotape
28 deposition of Plaintiff demonstrating re-enactment of lawn mower accident).

## IV. ARGUMENT

### A. The Request For A Demonstration Of The Hawk 2 Drive Is Permissible And Warranted Under Fed. R. Civ. P. 26, 30, and 45

Although Seagate has agreed to designate Lealon McKenzie and Randall Hampshire – who designed and implemented the relevant portions of the Hawk 2 drive – to testify on its behalf at deposition, *inter alia*, about the features, operation, and structure of that prior art drive, Seagate has refused to permit them to demonstrate its capabilities during the deposition. Yet, a demonstration is needed to appreciate fully the extent to which the prior art Hawk 2 disk drive anticipates the purported invention claimed in the '473 patent. At a high level, the '473 patent claims a system in which an end-user, by means of a "user interface," can switch a disk drive between a faster, noisier "performance" mode and a quieter, but slower, "quiet" mode. *See e.g.,* Homrig Decl., Exh. 4 ['473 patent] at 43:53-65, claim 7. To overcome the presumption of validity, the Texas defendants – and Seagate, in its own case – must illustrate the difference in acoustic noise generated by the drive in each mode, the difference in the speed with which the drive moves from one track to another in each mode, and the ability of a user to employ the interface to switch between modes. However articulate Mr. McKenzie and Mr. Hampshire may be, their narrative description of these drive characteristics is no substitute for a demonstration that would permit the jury to see a demonstration of how – long before the alleged inventions of the '473 patent – Seagate and its customers could – and did – change the settings on a Hawk 2 drive from "quick" to quiet," and to see and hear the difference between the two modes, both audibly and on an oscilloscope.

Seagate contends that the Federal Rules do not permit a party to compel a demonstration by means of a subpoena, but points to no such prohibition in the rules and cites to no cases interpreting Federal Rules of Civil Procedure 30 and 45 so narrowly. Indeed, Courts considering this very issue have compelled demonstrations because, as is the case here, "[n]ot only is a picture -- *a fortiori a* moving picture -- worth a thousand words, but often it can convey the nuance of motion and description better than the most precise and articulate witness could ever convey merely by means of the tongue." *Moncrief v. Fecken-Kipfel America, Inc.,* 1988 U.S.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
ATTORNEYS AT LAW

1  Dist. LEXIS 6153, Case No. 88-4930, at *5 (E.D. Pa. June 23, 1988) (granting motion to compel
2  videotaped reenactment of plaintiff's accident while operating machine manufactured by
3  defendant); *see also Brown v. General Instrument Corp., et al.*, 1995 U.S. Dist. LEXIS 5472, 93
4  Civ. 7907 (KMW), at *2 (S.D.N.Y. Apr. 26, 1995) (granting motion for videotape demonstration
5  of plaintiffs at their workstations because a demonstration of the physical motion was plainly
6  relevant to the issues in the case); *Gillen v. Nissan Motor Corp. in U.S.A.,* 156 F.R.D. 120, 121-
7  23 (E.D. Pa. 1994) (granting motion to compel plaintiff to bring her automobile and attend a
8  videotaped "demonstration" of an alleged seatbelt defect); *Schmidt v. Bryner, et al.,* 2007 U.S.
9  Dist. LEXIS 60365, 4:06cv3285, at *3 (D. Neb. Aug. 15. 2007) (denying defendants' motion for
10 protective order preventing inspection and reenactment by individual officers who were
11 subpoenaed, where "a videotape of their versions of the events, including reenactment, for
12 discovery purposes will assist plaintiff's attorneys in learning and understanding the facts, a
13 principal purpose of discovery" and where "reenacting the physical actions that occurred is likely
14 to focus their testimony and enhance their ability to describe them"). These cases also dispel the
15 notion that a deposition is somehow not conducive to a demonstration.

16 Seagate also argues, again without specific support, that gathering the necessary
17 components and providing the Hawk 2 prior art in working order, with its related hardware and
18 software, is unduly burdensome. For a run-of-the-mill third party that had not utilized the disk
19 drive in question since the mid-1990s, this argument might have traction. But for an active
20 litigant that has spent nine years gathering evidence to demonstrate the capabilities of the Hawk 2
21 drive in an effort to invalidate the very same patent in question here, this claim of undue burden
22 rings hollow. Indeed, during meet-and-confer, Seagate proposed that the Texas defendants agree
23 to substitute *a demonstration of the Hawk 2 drive by Mr. McKenzie during the Texas trial in*
24 *place of a demonstration during the deposition.*[1] Homrig Decl. at ¶ 6. As this proposal

---

[1] While Seagate proposed that it would bring Mr. McKenzie and Mr. Hampshire to perform the demonstration at the Texas trial, the Texas defendants could not enforce this promise, because both witnesses and Seagate reside outside the subpoena power of the Texas Court. Accordingly, the Texas defendants elected to proceed with a deposition.

KASOWITZ, BENSON,
TORRES & FRIEDMAN
LLP
ATTORNEYS AT LAW

- 7 -  CASE NO. 11 80 071 MISC WHA

illustrates, whatever Seagate's real motivation for objecting to a videotaped demonstration during the deposition, it is not the alleged burden of gathering the equipment in working order.

Seagate's next two arguments – that it should not be compelled to create facts and that the demonstration should be conducted by an expert witness – are also readily dispatched. Seagate is simply being asked to demonstrate the actual capabilities of the Hawk 2 drive as they existed prior to the filing date for the patent-in-suit. And it is that very issue which makes the deposition of Seagate a more suitable means of capturing this evidence than a presentation by an expert. Messrs McKenzie and Hampshire, who designed and implemented the relevant aspects of the Hawk 2 disk drive, can give a factual demonstration, from personal, percipient knowledge, that reflects the actual performance characteristics of the drive during the relevant time frame. Having a fact witness present this information may be especially important because the patentee, Convolve, disputes the capabilities of the Hawk 2 drive and the associated user interface, as well as the time frames in which they were implemented. However skilled, knowledgeable, and accurate an expert may be, his or her opinion-based demonstration of how the Hawk 2 drive and the user interface operated during the relevant time frame cannot substitute for the demonstration by Mr. McKenzie or Mr. Hampshire of how they actually used CTSS to change the Hawk drive between "quick" and "quiet" modes, or for the assurance, which these witnesses can give from personal knowledge, that the demonstration accurately reflects the process Seagate and its customers used in the prior art.

In sum, a demonstration is key to understanding and evidencing the mode-switching capabilities of the Seagate prior art, Seagate and its witnesses are in the best position to provide an accurate and reliable demonstration, and Seagate has not identified any cognizable basis for withholding this important evidence. Seagate's request to quash the demonstration should therefore be denied.

**B.     Seagate Should Be Compelled To Provide Discovery Concerning Demonstrations By Convolve**

The Texas defendants seek documents and testimony related to "Demonstrations by Convolve, Neil Singer, Mark Tanquary, or Kenneth Pasch to Seagate on or before March 4,

1999." Depending upon their specificity and scope, these disclosures, which Seagate acknowledges occurred, may constitute an "on-sale bar" that invalidates the '473 patent. Seagate does not contest their relevance, but rather raises concerns that Convolve will in the future argue that any document production or deposition testimony that Seagate provides voluntarily in response to the subpoena is a breach of a confidentiality agreement or the protective order entered in the Seagate litigation.[2]

To resolve this issue, the Texas defendants contacted Convolve's Texas litigation counsel on March 25 to confirm that Convolve does not object to a disclosure of this information in response to the subpoena. Convolve did not respond. The Texas defendants again contacted Convolve's litigation counsel on April 19 and 20, but, again, received no response. Homrig Decl., Exh. 5 [Email correspondence from J. Homrig to Convolve Texas litigation counsel].

Convolve is a party to the discussions in question, the Seagate litigation, and the Texas litigation. Moreover, it was served with a copy of the subpoena and attachments, and has repeatedly been notified of Seagate's concern regarding confidentiality. *Id.*; Homrig Decl., Exh. 6 [Email correspondence from Hitachi counsel to Convolve Texas litigation counsel]. Consequently, Convolve has had ample opportunity to object to any such disclosure in response to the subpoena, either by notifying the Texas defendants or Seagate, or by addressing the issue with this Court, but has not done so. Moreover, any documents produced in response to this topic would be designated under the protective order in the Texas litigation, and any testimony in response to this topic would occur in a judicial proceeding in which Convolve will have the opportunity to designate any information that it deems to be confidential. The Texas defendants therefore request that this Court (1) deny Seagate's motion to quash the discovery about the Convolve demonstrations and (2) issue an order compelling Seagate to provide the Texas

---

[2] Seagate does not explain how providing such documents and testimony would violate the S.D.N.Y. protective order. Given that the Texas defendants seek documents from and testimony regarding the pre-1999 disclosures themselves, as opposed to documents produced by Convolve in the Seagate litigation, or other litigation documents, the S.D.N.Y. protective order appears to have no applicability to the requested discovery.

defendants with such discovery, thereby precluding Convolve from later asserting that Seagate's compliance with this aspect of the subpoenas was somehow voluntary.

### C. The 2011 Subpoena Is Narrowly-Tailored And The Texas Defendants Do Not Require Seagate To Search Again For Documents Previously Produced

The 2011 Subpoena is narrowly-tailored and not unduly burdensome. The Texas defendants have, by agreement, limited the requests to the amended attachment that was served on March 28, 2011. As an initial matter, the Texas defendants do not request that Seagate search again for documents previously produced. Instead, the Texas defendants request that Seagate produce the documents and things that it has already gathered for its own litigation, including materials gathered after Seagate made its last production in this case, that are responsive to the specific requests in the 2011 Subpoena.

Seagate's production in response to the Texas defendants' 2009 Subpoena, as well as Seagate's statements during meet-and-confer about the 2011 Subpoena, cast doubt about whether Seagate has provided the Texas defendants with a complete set of materials that it has gathered concerning the Hawk and Quasar disk drives. For example, while Seagate argues in its Motion that it is unlikely that it would have working samples of some of its prior art hard drives, Seagate indicated during meet-and-confer that it has gathered samples of at least some of the drives. Homrig Decl. at ¶ 7. But it has not produced them. Likewise, Seagate indicated during meet-and-confer that it has gathered information showing how to determine when a prior art hard drive was manufactured and/or sold, but has not yet produced it in response to either set of subpoenas. *Id.* The Texas defendants simply seek the same materials concerning the prior art Hawk and Quasar disk drives that Seagate has gathered for its own litigation. This discovery is no less relevant to the Texas defendants' claims that the '473 patent is invalid than Seagate's own allegations about the '473 patent's invalidity, and there is no legitimate argument that producing materials that have already been identified or gathered is unduly burdensome. In short, Seagate has identified no legitimate basis for withholding these materials, and its motion to quash should be denied.

### D. Seagate's Request For A Blanket Protective Order Is Unnecessary and Unwarranted

The Texas defendants diligently met and conferred with Seagate to narrow the discovery requests to the limited set requested in the 2011 Subpoena. To the extent that Seagate produces the materials that have already been requested, the Texas defendants do not anticipate further need for discovery from Seagate. Moreover, under the Texas Court's scheduling order, the time for serving new discovery requests has expired. As a result, Seagate's request is moot. Should it come to light that Seagate has withheld responsive materials not previously identified, however, the Texas defendants should not be precluded from seeking them, whether through motion practice in this Court or by seeking leave of the Texas Court to serve additional discovery. As a result, Seagate's request for a blanket protective order is both unnecessary and unwarranted.

### V. CONCLUSION

For the foregoing reasons, the Texas defendants respectfully submit that Seagate's motion to quash and/or modify should be denied, and that Seagate should be ordered to provide both the agreed upon discovery and the additional documents and testimony requested in the 2011 Subpoena.

Dated: April 21, 2011　　　　　　　　　　　　Kasowitz, Benson, Torres & Friedman LLP

By: */s/ Jeffrey G. Homrig*
　　Jeffrey G. Homrig
　　Attorneys for Defendant Hitachi Global
　　Storage Technologies, Inc. and Hitachi Ltd.